Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| ENGINEERING SERVICES INTERNTIONAL, INC.  Demandante-Apelante  Vs.  AUTORIDAD DE ENERGÍA ELÉCTRICA  Demandada-Apelada | TA2026AP00296 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Sn Juan  Caso Núm. SJ2018CV10278  Sala: 905  Sobre: SENTENCIA DECLARATORIA |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez.

Cruz Hiraldo, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 21 de mayo de 2026.

Comparece la parte apelante, Engineering Services International, LLC, solicita la revocación de la *Sentencia Sumaria Parcial* notificada el 19 de diciembre de 2025 por el Tribunal de Primera Instancia, Sala de San Juan. El foro primario desestimó la segunda demanda enmendada de la parte apelante, declaró nulo el contrato de servicios profesiones suscrito con la parte apelada, Autoridad de Energía Eléctrica, y ordenó la devolución a la parte apelada de todos los pagos efectuados en consideración al contrato suscrito entre las partes.

Por los fundamentos expuestos en esta sentencia, *revocamos* la sentencia apelada.

### -I-

Según muestra el expediente electrónico, la parte apelada solicitó la presentalión de propuestas para el diseño y construcción de un sistema de pretratamiento de agua cruda para la Central San Juan. Lo anterior vía el proceso de compras gubernamental RFP-00400 para la diseño, desarrollo y

construcción del proyecto *Advanced Water Treatment System-San Juan Steam Plant*. A grandes rasgos, las especificaciones del requerimiento definieron el diseño, construcción y puesta en marcha de una planta de tratamiento de aguas que debía producir 1,200 galones por minuto de agua ultrapura. El nuevo sistema también debía ser integrado a las facilidades existentes. La parte apelada adjudicó la *buena pro* del proyecto a la parte apelante. El 28 de octubre de 2016, las partes suscribieron el Contrato A/S 74374, "Advance Water Treatment System San Juan Steam Plant" por $5,885,000. Durante la ejecución del contrato, surgieron múltiples discrepancias en cuanto a la instalación de cuatro bombas de agua. Ante ello, el 27 de noviembre de 2018, la parte apelante presentó una solicitud de sentencia declaratoria contra la parte apelada a los fines de determinar si las bombas en controversia eran parte del contrato, y debían o no ser provistas por la parte apelante.

El 18 de marzo de 2019, la parte apelante presentó demanda enmendada. Identificó la disputa en torno a las bombas de agua cruda "raw water pumps" que alimentaban la osmosis reversible "RO" como la controversia central. Indicó que, a partir del 30 de marzo de 2017, comenzaron los desacuerdos en torno a las bombas, cuando la parte apelada supuestamente negó aprobar parte del diseño incluido bajo el "Submittal 8A-Remisión 29 Basic Equipment Layout". En suma, la parte apelante insistió sobre la falta de acuerdo en cuanto a la instalación de bombas nuevas o el uso de unas bombas existentes identificadas como *RWP-01* y *RWP-02*. Concluyó, que la parte apelada actuó de mala fe, atrasó el trabajo debido a que, entre otras razones, exigió bombas nuevas de agua no incluidas entre las prestaciones en el contrato. Por ello, solicitó sentencia con el propósito de establecer que: (1) la parte apelada incumplió con el contrato; (2) ante el incumplimiento, está

liberado de cumplir con el contrato; y (3) no tiene que proveer las bombas según el contrato. Reclamó la eliminación de las multas impuestas por la parte apelada por $588,500, y $544,793 en concepto de pagos retenidos. Además, reclamó daños por incumplimiento de contrato, una extensión de días al contrato, y la conexión del proyecto a las bombas existentes.

Finalizado el desfile de prueba, y superados múltiples asuntos interlocutorios, el 9 de diciembre de 2024 la parte apelada presentó *Moción de Sentencia Sumaria Parcial*. Del escrito surge que la tesis central de la parte apelada es que "[a] la fecha de la subasta, del otorgamiento del Contrato y de la ejecución de los trabajos bajo el Contrato, [la parte apelante] estaba inscrita en el Registro de Corporaciones del Departamento del Estado de Puerto Rico como una corporación doméstica regular con fines de lucro", y que "el 22 de julio de 2023, es decir, casi siete (7) años después de otorgado el Contrato y casi cinco (5) años después de radicada la demanda de autos, [la parte apelante] optó por convertirse de una corporación regular a una compañía de responsabilidad limitada".

Por tanto, razonó que la parte apelante al contratar con la autoridad para la ejecución del proyecto violó la *Ley de la Junta Examinadora de Ingenieros, Arquitectos, Agrimensores y Arquitectos Paisajistas*, Ley Núm. 173 del 12 de agosto de 1988, y la *Ley General de Corporaciones*, Ley Núm. 164 del 16 de diciembre de 2009. Ambos estatutos solo permiten a corporaciones profesionales y corporaciones de responsabilidad limitada compuestos por accionistas licenciados en la ingeniera ofrecer servicios de ingeniería en Puerto Rico. La parte apelada razonó que al momento de suscribir el contrato la parte apelante no podía ofrecer servicios de ingeniería en Puerto Rico. Por ello, concluyó que el contrato entre las partes carece de eficacia jurídica y *es nulo ab initio*. En atención a estas premisas, solicitó la desestimación de la segunda

demanda enmendada, la declaración de nulidad radical sobre el contrato y la devolución de "todo el dinero recibido bajo el Contrato nulo e ilegal, ascendente a $4,376,140.50". La parte apelante presentó un escrito en oposición en el cual aceptó todos los hechos propuestos por la parte apelada. No obstante, solicitó al foro primario dejar vigente aquellas cláusulas del contrato no relacionadas con trabajos o servicios de ingeniería. También solicitó la aplicación de la doctrina de actos propios y enriquecimiento injusto como impedimento a la petición de nulidad del contrato. La parte apelada presentó una réplica para oponer el escrito propuestos por la parte apelante, y luego este último presento una breve dúplica. Sometido el asunto, el foro primario dictó la sentencia sumaria parcial apelada. En el dictamen el foro de primera instancia produjo las siguientes determinaciones de hechos:

1. La AEE es una corporación pública e instrumentalidad del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demandada. Véase 22 L.P.R.A. sec. 193.

2. El 28 de junio de 2005, ESI se incorporó como una corporación regular con fines de lucro ante el Departamento de Estado de Puerto Rico con el propósito de hacer "cualquier negocio o acto lícito para los cuales las corporaciones pueden organizarse conforme la Constitución y la LGC."

3. El 28 de octubre de 2016, la AEE y ESI otorgaron el contrato número A/S 74374 titulado "Advance Water Treatment System San Juan Steam Plant C-72-096-40 (SRF)"(en adelante el "Contrato"), por el precio pactado de $5,885,000.00.

4. ESI compareció y otorgó el Contrato como Engineering Services International Inc., "a Corporation organized and existing under the laws of Commonwealth of Puerto Rico, Authorized to do business in Puerto Rico".

5. ESI es el Contratista ("the Contractor") bajo el Contrato.

6. Conforme al Artículo 2.6 del Contrato, el Contratista ("Contractor"), es decir, ESI, es la compañía que realizaría todo el trabajo según definido en el Artículo 1 del Contrato.

7. Conforme al Artículo 1 del Contrato, ESI, como el Contratista, venía obligada a proveer toda la ingeniería, diseño, labor, materiales, equipo, herramientas, supervisión, prueba, permisos y servicios para el diseño y construcción del sistema avanzado de tratamiento de agua para la Central San Juan.

8. Los "Proposal Forms" forman parte del Contrato.

9. En los "Proposal Forms", en cuanto al tipo de organización y negocio, ESI indicó lo siguiente: "Engineering Services International Inc.: Sole proprietor for profit corporation, Puerto Rico based company in Good Standing".

10. Bajo el Contrato, ESI tenía que obtener y mantener todas las licencias, permisos y autorizaciones requeridas para llevar a cabo todos los servicios y tareas requeridos bajo el Contrato.

11. Bajo el Contrato, ESI venía obligada a observar y cumplir con todas las leyes federales, estatales y municipales que de alguna forma afectaran el trabajo a ser realizado por ESI. En específico, el Artículo 35 del Contrato dispone:

> "The Contractor shall observe and comply with any and all Federal, State, Municipal Laws, by-laws, ordinances, and regulations in any matter affecting the work, the equipment or the materials used in the proposed rehabilitation and/or installation or construction, and those employed on the work or the conduct of the work, and with all such orders and decrees as exist at present or may be enacted prior to the completion of the work by bodies or courts having any jurisdiction or authority over the work. The Contractor shall save and hold harmless and to indemnify PREPA and its representative's officers, agents, and servants against any claim or liability arising from or based on the violation of any such law, by-law, ordinance, regulation, order or decree, whether by himself or his employees."

13. El Contrato se rige por y se interpreta y analiza bajo las leyes del Estado Libre Asociado de Puerto Rico.

14. Bajo el Contrato, ESI se obligó a cumplir con las disposiciones de la Ley Núm. 84 de 18 de junio de 2002, conocida como el Código de Ética para contratistas, suplidores de bienes y servicios y solicitantes de incentivos económicos de las agencias ejecutivas del Estado Libre Asociado de Puerto Rico.

15. Bajo el Contrato, la AEE pagó a ESI la suma de $4,376,140.50.

16. El 12 de junio de 2023, el CIAPR presentó un escrito en el presente caso argumentando, en esencia, que ESI era una corporación regular, y como tal, no estaba autorizada por ley a ejercer la ingeniería y estaba vedada de entrar en contrataciones para ofrecer servicios de ingeniería en Puerto Rico.

17. El 22 de julio de 2023, ESI optó por hacer la conversión de una corporación regular a una compañía de responsabilidad limitada, bajo el nombre Engineering Services Int'l, LLC.

18. Al hacer la conversión a una compañía de responsabilidad limitada, ESI varió su propósito a lo siguiente:

> "... to engage in any and all lawful businesses or activities in which a limited liability company may be engaged under applicable law. Furthermore, the Limited Liability Company ("LLC") shall engage in the business to render, conduct or promote the professional services of engineering, engineering consulting services, to conduct and operate an engineering consulting practice and provide specialized engineering services and engage in the sale of engineering related products and services, through the contracting and/or hiring of professionals, experts and licensed personnel in the engineering field as required by the laws and regulations of the Commonwealth of Puerto Rico and of the applicable bars and engineering related government sanctioned and legally approved engineering professional chamber and/or association; and, to engage for profit into any lawful act or activity for which limited

liability corporations and limited liability corporations of professionals may be organized under the 2009 General Corporation Law, as amended from time to time."

Sobre la base de estas determinaciones de hechos el foro apelado concluyó como cuestión de derecho:

A la luz de estos hechos esenciales y pertinentes no controvertidos, y del derecho aplicable anteriormente discutido, corresponde determinar si el Contrato es nulo desde su origen y, de ser así, si la AEE tiene derecho a recobrar la totalidad de los dineros pagados a ESI. Contestamos ambas interrogantes afirmativamente.

Al momento de suscribirse el Contrato, tanto la Ley Núm. 173 como la Ley General de Corporaciones se encontraban vigentes. Dichos estatutos disponen de forma clara y expresa

que únicamente las corporaciones de servicios profesionales o las compañías de responsabilidad limitada están legalmente autorizadas para prestar servicios de ingeniería o diseño. No obstante, ESI era entonces una corporación regular, por lo que carecía de autorización legal para ofrecer dichos servicios. En consecuencia, el Contrato constituye uno para la práctica ilegal de la ingeniería por parte de ESI y, por ende, es nulo ab initio.

[…]

Es norma reiteradamente establecida que, cuando una entidad gubernamental, como lo es la AEE, desembolsa fondos públicos al amparo de un contrato nulo, tiene derecho a recobrar los dineros así pagados, sin que esté obligada a devolver la contraprestación recibida. …

El foro apelado declaró nulo radicalmente el contrato, desestimó la segunda demanda enmendada y ordenó a la parte apelante el pago de $4,376,140.50. La parte apelante solicitó reconsideración a la sentencia sumaria parcial pero el tribunal denegó reconsiderar. Inconforme, la parte apelante comparece y señala los siguientes errores:

ERRÓ EL TPI AL NO HABER SOSTENIDO LA VALIDEZ DEL CONTRATO ANTE EL HECHO DE QUE LA CORPORACIÓN (ESI) ACTUÓ COMO AGENTE A TENOR CON LO RESUELTO POR ESTE TRIBUNAL DE APELACIONES EN

KARIMAR CONST. V. MUN. HORMIGUEROS, KLAN202300211; EN LA ALTERNATIVA, ERRÓ EL TPI AL HABER DECLARADO NULO LA TOTALIDAD DEL CONTRATO ENTRE LAS PARTES, CUANDO SOLO DEBIÓ DECLARAR NULAS LAS CLÁUSULAS RELACIONADAS A LOS SERVICIOS DE INGENIERÍA Y DISEÑO, A TENOR CON LO RESUELTO EN CIAPR VS. AAA, 131 D.P.R. 735 (1995)

ERRÓ EL TPI AL ORDENARLE A ESI LA RESTITUCIÓN A LA AEE DEL DINERO QUE PAGÓ Y POR NO ORDENARLE A LA AEE LA RESTITUCIÓN A ESI DE TODOS LOS EQUIPOS INSTALADOS Y MATERIALES UTILIZADOS EN EL PROYECTO O EL VALOR MONETARIO DE LOS MISMOS.

ERRÓ EL TPI AL APLICAR LAS DISPOSICIONES DEL ARTÍCULO 23 DE LA LEY NÚM. 73, 20 L.P.R.A. 711q-2 YA QUE EL MISMO ES INCONSTITUCIONAL Y MENOSCABA LAS OBLIGACIONES CONTRACTUALES.

La parte apelada presentó alegato en oposición. En consecuencia, procedemos a resolver la presente apelación con el beneficio de la comparecencia de las partes, el contenido del expediente electrónico, y el derecho aplicable.

*-II-*

*-A-*

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, regula el procedimiento relacionado a la presentación, consideración y disposición de una moción de sentencia sumaria. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., Estados Unidos, Publicaciones JTS, 2011, T. III, pág. 1038. Este mecanismo procesal faculta la solución rápida, justa y económica de los casos en los que no existen hechos materiales en controversia y sólo reste aplicar el derecho. *Oriental Bank v. Caballero García*, 212 DPR 671, 678-679 (2023); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). Así pues, de la prueba que acompaña la solicitud de sentencia sumaria debe surgir la inexistencia de

controversia sobre los hechos medulares del caso. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 277 (2021); *Zambrana García v. ELA et al.*, 204 DPR 328, 341-342 (2020). En otras palabras, el tribunal procederá a dictar la sentencia solicitada si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente". Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V. La parte que promueve la sentencia sumaria tiene el deber de exponer su derecho con claridad, y demostrar que no existe controversia sustancial sobre algún hecho material. *Oriental Bank v. Caballero García, supra*, pág. 679; *Meléndez González et al. v. M. Cuebas, supra*, pág. 110.

　　Ciertamente, "[é]sta puede dictarse a favor o en contra del promovente según proceda en derecho". Cuevas Segarra, *op. cit.*, pág. 1040. La Regla 36.3(c) de Procedimiento Civil, 32 LPRA Ap. V, provee para que el tribunal dicte sentencia sumaria a favor del promovente --de proceder en derecho-- si la parte contraria no responde de forma detallada y específica a una solicitud debidamente formulada. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013). El hecho de presentar una moción de sentencia sumaria no garantiza la solución sumaria del pleito a favor del promovente. *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652, 666 (2000). "[E]l tribunal no deberá emitir una sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) haya alegaciones afirmativas en la demanda que han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o

(4) como cuestión de derecho, ésta no proceda". *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023).

Los foros apelativos nos encontramos en la misma posición que los foros de primera instancia al evaluar la procedencia de una solicitud de sentencia sumaria. *Cruz, López v. Casa Bella y otros, supra*, pág. 994; *Birriel Colón v. Econo y otro*, 213 DPR 80, 91 (2023); *Oriental Bank v. Caballero García, supra*, pág. 680. Sin embargo, nuestra función está limita a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y otro, supra*; *Segarra Rivera v. Int'l. Shipping et al., supra*, pág. 981; *Meléndez González et al. v. M. Cuebas, supra*, págs. 114-116.

### -B-

Toda erogación de fondos en nuestro país está supeditada al siguiente imperativo constitucional:

> Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley.
>
> Art. VI, Sec. 9, Const. P.R., LPRA, Tomo 1, ed. 2008, pág. 429.

Esta disposición constitucional obliga al Estado a manejar los fondos públicos con los más altos principios éticos de fiducia. Véanse, *Lugo v. Municipio Guayama*, 163 DPR 208 (2004); *Hatton v. Mun. de Ponce*, 134 DPR 1001 (1994); *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 126 DPR 864 (1990). Con el propósito de cumplir con este precepto constitucional, la Asamblea Legislativa ha aprobado legislación diseñada a imponer controles fiscales a la contratación gubernamental. Así, por ejemplo, la Ley Núm. 230 de 23 de julio de 1974, según enmendada, conocida como Ley de

Contabilidad del Gobierno de Puerto Rico, 3 LPRA sec. 283 *et seq.*, establece la política pública en relación con el control y la contabilidad de los fondos y la propiedad pública. La política pública plasmada en esta ley consiste en que la contabilidad del Gobierno:

> ... provea la información financiera necesaria para la administración de las operaciones gubernamentales y para la preparación y ejecución del presupuesto, y constituya un control efectivo sobre los ingresos, desembolsos, fondos, propiedad y otros activos del gobierno[.]
>
> Art. 2(b) de la Ley Núm. 230, 3 LPRA sec. 283a(b).

Esta política pública requiere:

> ... que los gastos y fondos públicos sean legítimos y legales y promuevan la máxima economía y óptima utilización de los recursos públicos y que los gastos del Gobierno se hagan dentro de un marco de utilidad, necesidad y austeridad.
>
> *RDT Const. Corp. v. Contralor I*, 141 DPR 424, 451 (1996).

La legislación reseñada, también tiene el propósito de crear "control previo de todas las operaciones del gobierno" de manera que cada entidad gubernamental pueda planificar su presupuesto y programas de gobierno. Art. 2(e) de la Ley Núm. 230, 3 LPRA sec. 283a(e)). El Art. 9(a), 3 LPRA sec. 283h(a), del estatuto dispone:

> **Las dependencias ordenarán obligaciones y desembolsos de sus fondos públicos únicamente para obligar o pagar servicios, suministros de materiales y equipos, reclamaciones u otros conceptos que estuvieren autorizados por ley**. El Secretario contabilizará las obligaciones y efectuará y contabilizará los desembolsos a través de documentos que sometan las dependencias, los cuales serán previamente aprobados para obligación o pago por el jefe de la dependencia correspondiente o por el funcionario o empleado que éste designare como su representante autorizado. (Énfasis suplido.)

De igual manera, el Art. 8(a) de la Ley Núm. 230, 3 LPRA sec. 283g(a), establece, en lo pertinente, que

> [t]odas las asignaciones y los fondos autorizados para las atenciones de un año económico, serán aplicados exclusivamente al pago de los *gastos **legítimamente incurridos*** durante el respectivo año o al pago de obligaciones ***legalmente contraídas*** y debidamente asentadas en los libros. (Énfasis suplido).

El concepto "obligación" es definido en el Art. 3(k) de la Ley Núm. 230, 3 LPRA sec. 283b(k), como:

> Un compromiso contraído que esté representado por orden de compra, contrato o documento similar, pendiente de pago, firmado por autoridad competente para gravar las asignaciones, y que puede convertirse en el futuro en deuda exigible.

De las disposiciones de ley antes citadas se deduce que la facultad del Estado para desembolsar fondos públicos está limitada por procedimientos y preceptos establecidos en las leyes. Véanse, *Mun. Quebradillas v. Corp. Salud Lares*, 180 DPR 1003 (2011); *Colón Colón v. Mun. de Arecibo*, 170 DPR 718 (2007); *De Jesús González v. A.C.*, 148 DPR 255 (1999).

### -III-

Es norma, la facultad del Gobierno de Puerto Rico para contratar y comprometer fondos públicos está limitada por las normas estatutarias y jurisprudenciales respecto a la sana administración pública. *Génesis Security v. Depto. Trabajo*, 204 DPR 986, 997-998 (2020); Véase, Art. VI, Sec. 9, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 444. En *Cordero Vélez v. Mun. de Guánica*, 170 DPR 237, 249 (2007), el Tribunal Supremo estableció la pauta que rige la disposición del presente recurso apelativo, allí señaló "los tribunales debemos velar por el cumplimiento con las disposiciones legales dirigidas a proteger los desembolsos públicos, ya que esta normativa tiene como fin proteger el interés público en los dineros del pueblo y no a las partes contratantes".

Las partes no disputan los hechos del caso, también están corroborarlos en los documentos contenidos en el expediente

electrónico. Reglas 36.3 (c) y (e) de Procedimiento Civil, *supra.* La parte apelante era una corporación regular al momento de firmar el contrato de servicios profesionales con la parte apeada. Conforme demuestra el expediente electrónico, tampoco existe controversia en torno a que el único accionista de la corporación, quien también funge como su presidente, es un ingeniero debidamente licenciado a ejercer la profesión de ingeniero en nuestra jurisdicción y que la corporación ofrece sus servicios profesionales a través de su único accionista y de sus empleados todos colegiados debidamente autorizados a ejercer la profesión. La parte apelada conocía de tales hechos y no objetó firmar el contrato. Tampoco, al contestar la demanda, cuestionó la legalidad del contrato firmado.

El Art. 4(a) de la *Ley de la Junta Examinadora de Ingenieros, Arquitectos, Agrimensores y Arquitectos Paisajistas de Puerto Rico*, Ley Núm. 173 de 12 de agosto de 1988, 20 LPRA sec. 711b, establece las siguientes disposiciones sobre el ejercicio de la ingeniería en Puerto Rico:

> Comprende la prestación de cualquier trabajo profesional o la ejecución de cualquier trabajo de naturaleza creadora para cuya realización se requieran los conocimientos, adiestramiento y experiencias de un ingeniero o arquitecto.
>
> Incluye la aplicación de conocimientos especiales, las ciencias físicas, matemáticas y de ingeniería o arquitectura al presentarse tales servicios profesionales, o al ejecutarse tales trabajos de naturaleza creadora, como se requiera en cualquier trabajo de asesoramiento, estudios, investigaciones, valoraciones, la realización de trazado de planos, mediciones, inspecciones y superintendencias de obras en construcción, a los fines de asegurar la observación de sus especificaciones y la realización adecuada de lo proyectado en relación con cualesquiera obras públicas o privadas, instalaciones, maquinarias, procedimientos y métodos industriales, equipo, sistema y trabajos de carácter técnico en ingeniería o en arquitectura.

De otro lado, el Art. 23 de la Ley Núm. 173 de 12 de agosto de 1988, 20 LPRA sec. 711q-2, dispone sobre el ejercicio corporativo de la profesión de la ingeniería en Puerto Rico que:

> El ejercicio corporativo de la ingeniería, la arquitectura, la agrimensura y la arquitectura paisajista estará permitido siempre y cuando, todos sus accionistas sean licenciados en sus respectivas profesiones y dicha corporación sea organizada como una corporación profesional de conformidad con las secs. 711 a 711z de este título y con la Ley General de Corporaciones de Puerto Rico.

A su vez, los Arts. 18.01 y 18.02 de la Ley de General de Corporaciones, Ley Núm. 164-2009, 14 LPRA secs. 3921 y 3922, permiten a personas naturales licenciadas como ingenieros a ofrecer tales servicios por vía de una corporación profesional.[1] El Art. 18.01 de la Ley General de Corporaciones, 14 LPRA sec. 3921, establece la intención legislativa en torno a la incorporación de individuos en corporaciones:

> Es el propósito de este capítulo proveer para la incorporación de un individuo o grupo de individuos que le rindan un mismo servicio profesional al público, para lo cual la ley le requiere a dichos individuos que obtengan una licencia u otra autorización legal.

En cuanto a estos "individuos" destacamos la definición de "corporación profesional" ofrecida por el Art. 18.02(b) de la Ley General de Corporaciones, 14 LPRA sec. 3922(b):

> Significa una corporación que está organizada bajo este capítulo, con el propósito único y exclusivo de prestar un servicio profesional y los servicios auxiliares o complementarios a este servicio profesional, y que tiene como accionistas únicamente a individuos que estén debidamente licenciados en el Estado Libre Asociado para ofrecer el mismo servicio profesional que la corporación.

---

[1] El Art. 19.06 de la Ley de General de Corporaciones, Ley Núm. 164-2009, 14 LPRA sec. 3956, permite a los miembros de una compañía de responsabilidad limitada a también ofrecer los servicios profesionales enumerados en los Arts. 18.01 y 18.02 de la Ley de General de Corporaciones, supra, entre ellos la ingeniería.

En *Accurate Sols. v. Heritage Environmental,* 193 DPR 423, 434-435 (2015), el Tribunal Supremo de Puerto Rico expresó lo siguiente sobre el ejercicio corporativo de la ingeniería:

> Además de describir el ejercicio de la ingeniería, 20 LPRA sec. 711b, la [Ley 173] también establece que el ejercicio corporativo de la práctica de la ingeniería estará permitido siempre que todos sus accionistas estén debidamente certificados y la misma esté debidamente organizada como una corporación profesional. 20 LPRA sec. 711y. Así pues, aquella persona natural o jurídica que practique la ingeniería sin cumplir con las disposiciones contenidas en la [Ley 173], podrá estar sujeto a sanciones monetarias, pena de reclusión, o ambas. (Énfasis nuestro.)

En el caso de autos, el Tribunal de Primera Instancia declaró nulo el contrato celebrado entre las partes, debido a que la parte apelante al momento de firmar el contrato no es una corporación de servicios profesionales. Así, concluyó que el contrato es contrario a la Ley Núm. 173, *supra*, y por tanto nulo radicalmente. Erró el foro recurrido mediante dicho proceder. Según el andamiaje estatutario ya discutido, **la Ley Núm. 173,** *supra*, **no impide categóricamente que, una corporación general preste servicios profesionales a través de agentes o empleados debidamente licenciados o autorizados para rendir servicios profesionales regulados por el Estado**. Solamente requiere a una corporación profesional estar compuesta únicamente por accionistas debidamente autorizados a ejercer la misma profesión cuyo servicio ofrece. Debemos recordar que, debido a su naturaleza "artificial", las corporaciones actúan por via de sus agentes y empleados. *Rivera Sanfeliz et al v. Jta. Dir. FirstBank,* 193 DPR 38, 50 (2015); 2 *Fletcher's Cyclopedia of the Law of Private Corporations,* Sec. 437, pág. 315 (1998).

En referencia particular a la controversia medular del recurso ante nos, debemos destacar que la doctrina de hermenéutica legal *casus omissus* establece que las omisiones del

legislador no pueden ser curadas por los tribunales. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 43, pág. 311. *Véase*, además, Antonin Salia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, pág. 97 (2012). Es decir, "**el tribunal no está autorizado a adicionar limitaciones o restricciones que no aparecen en el texto de la ley,** ni a suplir omisiones al interpretarla con el pretexto de buscar la intención legislativa". *Com. Elect. PPD v. CEE et al.* 205 DPR 724, 755 (2020), citando a *Rosado Molina v. ELA y otros,* 195 DPR 581, 589–590 (2016). Más aún, cuando desde tiempo inmemorial se reconoce como principio general de derecho que "lo no prohibido está permitido". *Campos del Toro v. Ame. Transit Corp.,* 113 DPR 337, 345 (1982). *Véase*, además, *Pueblo v. Román Feliciano,* 181 DPR 679, 687 (2011); Victoria Iturralde Sesma, *Consideración crítica del principio de permisión según el cual "lo no prohibido está permitido",* pág. 211, País Vasco, España (1998) citando a Hans Kelsen, *Teoría General del Estado,* pág. 290 (1934). Por tanto, no es la función del juzgador ampliar la ley o añadir prerrogativas desprovistas por un estatuto. *Reading Law: The Interpretation of Legal Texts, supra,* pág. 93. No obstante, es importante que la anterior norma se armonice con el principio legal de que el texto de una ley incluye tanto lo que está expreso como lo que está implícito. Así pues, cuando un estatuto autoriza un acto, también autoriza todo lo que sea necesario para llevar a cabo ese acto. *Reading Law: The Interpretation of Legal Texts, supra,* pág. 96.

En el caso de autos, el foro primario determinó como hechos incontrovertidos que la parte apelante no era una corporación de servicios profesionales. Empero del intercambio de cartas entre las partes surge que, la parte apelante puso a cargo del proyecto al ingeniero Confesor Vega Maisonet. Este empleado, actuó como

agente de la corporación, por lo tanto, la parte apelante podía prestar legalmente los servicios pactados.

La Ley Núm. 173, *supra,* no prohíbe que una corporación general pueda prestar servicios profesionales a través de un agente o empleado, siempre y cuando esté debidamente licenciado o autorizado para rendir dichos servicios profesionales. Por ende, erró el foro primario al decretar la nulidad del acuerdo bajo el fundamento de que el mismo es contrario a la ley.

### *-IV-*

En atención a los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, *revocamos* la sentencia sumaria parcial apelada. Devolvemos el presente caso al tribunal apelado para la continuación del pleito.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Juez Domínguez Irizarry concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones